UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

REINALDO ESPINOSA and IVONNE
ESPINOSA,

    Plaintiffs,

v.                                            Case No: 6:18-cv-1801-Orl-40TBS

QDI 1 LLC,

    Defendant.

## REPORT AND RECOMMENDATION

Pending before the Court in this Fair Labor Standards Act case is the parties' Joint Motion to Approve Settlement Agreement and Dismiss Case with Prejudice (Doc. 22). Upon due consideration, I respectfully recommend that the motion be **denied,** and the settlement agreement be **rejected**, with an opportunity to amend.

### Background

Plaintiffs worked as manual laborers for Defendant, a limited liability company that owns and operates a Ramada Inn (Doc. 1, ¶¶ 2, 8).[1] They filed this action on October 24, 2018, seeking unpaid minimum wages, unpaid overtime wages, liquidated damages, attorneys' fees and costs, all under the Fair Labor Standards Act, 29 U.S.C. §216(b) ("FLSA") (Doc. 1). After the complaint was filed, Defendant sought and received two extensions of time to respond (Docs. 16, 18). The parties used this time to engage in settlement discussions and, after discussing the facts and circumstances of Plaintiffs' employment and sharing information, they reached the current settlement (Doc. 22 at 2).

---

[1] Reinaldo Espinosa worked in the laundry department at $8.50 per hour. Ivonne Espinosa was a housekeeper and earned $8.50 per hour. (Doc. 1, ¶¶ 5,6).

The parties now seek approval of their settlement agreement ("Agreement") (Doc. 22-1), and dismissal of Plaintiffs' claims with prejudice.

## Discussion

*Legal Standard*

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (alternation in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally-mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." Barrentine, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1946)).

The parties seek judicial review and a determination that their settlement of Plaintiffs' FLSA claims is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). If a settlement is not one supervised by the Department of Labor, the

only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under section 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108 (1946)).

The Eleventh Circuit has said that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." Id. at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Id.

In determining whether a settlement is fair and reasonable, the Court considers the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8,

2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1331 (5th Cir. 1977)).

*Analysis*

In the usual course, the Court evaluates the settlement by contrasting it with the claim. This case settled before an answer was filed and without Plaintiffs having answered the Court's standard interrogatories in FLSA cases. So, the Court relies instead on the description provided by the parties in their motion: Reinaldo Espinosa claimed to be owed approximately $477 to $1,000 and Plaintiff Ivonne Espinosa claimed to be owed approximately $38 to $156 in unpaid wages. Under the terms of the Agreement, Defendant has agreed to pay Reinaldo Espinosa $454 for allegedly unpaid wages and an equal amount of $454 for liquidated damages ($908 total). Defendant has agreed to pay Ivonne Espinosa $50 for allegedly unpaid wages and an equal amount of $50 for liquidated damages ($100 total). The parties state that they separately negotiated Plaintiffs' attorneys' fees in the amount of $3,000 and costs of $500 ($3,500 total). On review of the limited information provided, I do not find the settlement to be fair and reasonable.

Plaintiffs have not quantified their claims but offer a range. Due to the disparity in the amounts claimed by each Plaintiff, evaluation of this compromise is difficult. If Mr. Espinosa's claim is $477 in unpaid wages, a settlement of $454 is plainly reasonable. If, however, his claim is $1,000, a settlement of $454 (less than half the amount claimed) would require a particularized rationale. A settlement of $50 for Ms. Espinosa's $38 claim is generous, indeed, but $50 for a $156 claim (or one third of that claim) demands explanation. The explanation offered is that "given the low number in dispute," the parties were able to settle, and all parties believe this to be a fair and reasonable resolution of

their claims given the wage records and likely affirmative defenses Defendant would raise (Doc. 22 at 2-3). While this does not address the reason for the disparity in the recoveries, I would be willing to accept this (in view of the small amounts agreed to be at issue even if the top of the range applied), but for the other deficiencies in the Agreement.

Plaintiffs' lawyer is supposed to receive $3,000 in attorney's fees and $500 for costs. The applicable statute provides that in an FLSA action seeking unpaid wages and overtime the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). This section has been interpreted to mean that "fee awards [are] mandatory for prevailing plaintiffs." Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1542 (11th Cir. 1985) (citation omitted); see also Shelton v. Ervin, 830 F.2d 182, 184 (11th Cir. 1987).[2] Here, the parties represent that the amount of attorney's fees was determined separately and apart from Plaintiffs' recovery. This is normally sufficient to establish the reasonableness of the fees and that Plaintiffs' recoveries were not adversely affected by the amount of fees paid to counsel. See Bonetti v. Embarq Management Co., 715 F. Supp. 2d 1222 (M.D. Fla. 2009); see also McQuillan v. H.W. Lochner, Inc., No. 6:12-cv-1586-Orl-36TBS, 2013 WL 6184063, at *3 (M.D. Fla. Nov. 25, 2013). In this case, I am not convinced that the Plaintiffs' recoveries were not affected.

Plaintiffs' counsel filed a short and plain complaint, the required certificate of interested persons, and the notice of pendency of related cases. Plaintiffs filed no motions, there was no discovery practice, and the case settled less than two months after

---

[2] The Agreement includes a section which states that neither Plaintiff shall be considered a prevailing party "for any purpose" (Doc. 22-1, ¶ 10). This section is, at best, unnecessary and may conflict with Provision 11, which entitles "the prevailing party" in any action for breach of the Agreement to recover attorneys' fees. I recommend that Provision 10 be **DELETED** from any revised Agreement.

the complaint was filed. The limited legal work involved does not appear to justify a fee of $3,000, especially considering that Plaintiffs may be taking over a 50% discount on their total claims. A fuller explanation of the reasonableness of this fee is required to show that the fee did not unreasonably compromise Plaintiffs' recovery.

I have other concerns. Although Defendant is a limited liability company, the Agreement includes a waiver and release of FLSA claims, purporting to release

> Defendant, their predecessors and successors in interest, assignees, parents, subsidiaries, divisions, and related companies and entities, and its past, present and future shareholders, officers, directors, supervisors, managers, employees, agents, attorneys, insurers, and representatives (hereafter collectively referred to as "Defendant"), in their individual and official capacities, and their heirs and legal representatives, of and from, any and all claims under the FLSA or any other wage related statute arising out of Plaintiffs' employment with Defendant.

(Doc. 22-1, ¶ 4). I have no idea what "assignees, parents, subsidiaries, divisions, and related companies and entities, and its past, present and future shareholders, officers, directors, supervisors, managers, employees, agents, attorneys, insurers, and representatives" the parties are talking about. And, I question whether Defendant identified everyone falling within the scope of this dragnet language to Plaintiffs before they signed the Agreement. Additionally, these unnamed entities and persons are not parties to this action, are not signatories to the Agreement, and do not appear to have paid any consideration for a release. So, the unanswered question is, why are they being released? Generally speaking, "[p]ervasive, overly broad releases have no place in settlements of most FLSA claims." Bright v. Mental Health Res. Ctr., Inc., No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012). See also Arguelles v. Noor Baig, Inc., 6:16-cv-2024-Orl-37TBS, slip op. at 2-3 (M.D. Fla. Feb. 24, 2017) (noting

that "a general release may not be used to release a non-party. Even if the parties were to cabin the release to FLSA claims, the Court remains skeptical as to the propriety of releasing FLSA claims against a non-party."). It is appropriate to release Plaintiffs' employer only.

    Also troubling is this provision:

> The Parties hereby expressly waive any and all right to a trial by jury with respect to any action, proceeding or other litigation resulting from or involving the enforcement of the Agreement **or any other action related to Plaintiffs' alleged employment with Defendant**.

(Doc. 22-1, Provision 15). The Court has no information as to whether there is any "other action" filed or contemplated and there is no consideration evident for extracting such a waiver. This provision is unreasonable on its face and cannot be approved.

    Finally, in the Agreement Plaintiffs indemnify Defendant and hold it harmless "from any interest, taxes or penalties assessed against it by any governmental agency as a result of the non-payment of taxes on any amounts paid to Plaintiffs under the terms of this Agreement." (Doc. 22-1, Provision 6). But the Agreement provides that Defendant will pay certain sums "for unpaid wages, minus applicable withholdings." (See Provision 3). To the extent Section 6 seeks to modify the employer's responsibility with respect to those withholding deductions, this provision is not reasonable.

    A final note is in order. The oversight required by the Court in these cases necessarily results in a level of scrutiny that is otherwise not the norm when parties are wise enough to settle. The deficiencies identified here need not be fatal, given additional

information, explanation, or editing. The parties are encouraged to address these issues in response to this report and recommendation.

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that the motion, **as presented,** be **DENIED** and the settlement agreement be **REJECTED**, without prejudice to clarification of these issues and amendment of the Agreement to satisfy the Court's concerns.

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on December 26, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties